UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**EUGENE S.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-001152-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on June 24, 2020, denied Plaintiff's application for disability insurance benefits.  Plaintiff has now moved for judgment on the pleadings (Doc. 21), and the Commissioner has filed a similar motion (Doc. 22).  For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

    On April 17, 2017, Plaintiff protectively filed his application for benefits, alleging that he became disabled on May 1, 2011. After initial administrative denials of his claim, Plaintiff appeared at an administrative hearing held on March 21, 2019.  Both Plaintiff and a vocational expert, Celena Earl, testified at that hearing.

    The Administrative Law Judge issued an unfavorable decision on November 7, 2019.  He first concluded that Plaintiff had not engaged in substantial gainful activity since his application date.  Next, he found that Plaintiff suffered from severe impairments including obesity, cervical spine degenerative disc disease, and lumbar spine degenerative disc disease.  He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

    Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a reduced range of light work.  He could frequently reach overhead with the right upper extremity and could frequently kneel, stoop, crouch, crawl, and climb stairs and ramps.  However, he could only occasionally climb ladders or be exposed to unprotected heights and moving machinery parts, and could never climb ropes or scaffolds.

From a mental standpoint, Plaintiff could understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions.

The ALJ next determined that Plaintiff could not perform his past relevant work as a machine operator. However, he could perform jobs like electronics worker, shipping and receiving weigher, and small parts assembler. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment, raises two issues. He asserts, first, that the ALJ erred in selectively rejecting the favorable portions of the report of Dr. Fabiano, a consultative examiner. Second, he contends that the ALJ substituted his own lay judgment for that of the medical experts.

## II.  THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing. It will then provide a summary of the most important medical records.

### A.  The Hearing Testimony

Plaintiff, who was 32 years old as of the date of the hearing, first testified that he had worked as a machine operator, driving a forklift and using other machinery as well. He was required to lift more than 50 pounds, to stand, and to operate foot controls. He said that he underwent surgery on his back to correct a medical error which occurred when an abscess was drained, and he had been experiencing significant pain ever since. He had continued to develop abscesses and had one at the base of his spine.

Plaintiff also testified that he had injured his back, neck, and shoulders in a car accident. The right shoulder was causing him more problems than the left, and he had numbness in his right arm as well as shooting pain in his legs. He was using a cane which had been prescribed by a doctor. His back pain had been treated by medication and chiropractic manipulation. He could not sit for more than five or ten minutes and could stand for only the same amount of time. His walking was very limited and he could comfortably lift only five pounds. Plaintiff also reported dropping objects and having difficulty writing, reaching, pushing, and pulling with his right arm.

When asked about his living arrangements, Plaintiff said that he lived in a house with his girlfriend and four children, the oldest of whom was eight. His girlfriend did the shopping and all of the household chores. He was able to drive a car but it was not comfortable. He did not sleep well at night and napped during the day. During a typical day, Plaintiff watched television and did little else. He was depressed about his situation and was seeing a counselor.

The vocational expert testified, first, that Plaintiff's past work as a machine operator was typically performed at the medium exertional level but that Plaintiff had performed it at the very

heavy level.  She was then asked questions about a person who could work at the light exertional level with various postural restrictions and who could do simple jobs.  She said that such a person could not do Plaintiff's past relevant work but could be employed as an electronics worker, a shipping and receiving weigher, and a small parts assembler.  She also provided numbers for these jobs as they existed in the national economy.

Next, the expert was asked questions about a person who had the same limitations but who needed to alternate between sitting and standing every twenty minutes and who walked with a cane and would be off task for more than 20% of the time.  She said that such a person could not be employed.

### B. The Relevant Treatment Records

The records show that Plaintiff was being treated for anxiety and depression since at least 2014.  At that time, his GAF was rated at 50 and his prognosis was guarded.  Medication and supportive therapy were recommended.  Notes from Dr. Rajendran made in 2016 indicate that Plaintiff's motivation and follow-through were problematic, and he was described as argumentative with very poor insight.  He frequently demanded pain medication from his psychiatrist although he was not being seen for back pain.  He was receiving other medications for his psychological conditions.  Dr. Rajendran closed Plaintiff's case due to his attitude and uncooperative behavior.  The notes indicate that Plaintiff reported not wanting to be around people due to irritability, and Dr. Rajendran noted some "personality issues" although his actual diagnoses were generalized anxiety disorder and depressive disorder.  (Tr. 258-59).

A 2015 MRI study of Plaintiff's lumbar spine was done due to his complaints of low back pain with radiculopathy.  It revealed only mild or minimal findings.  He continued to seek treatment for back pain in 2016 and 2017 from his family doctor and was given a list of pain specialists to see.  The results of physical examinations done during this time were grossly normal but he reported various symptoms including difficulty with walking and using stairs.   He was involved in a car accident in May of 2017 and reported back and neck pain from that accident as well.  An MRI showed some disc bulges in the cervical spine and there was a herniated disc seen at L5/S1, but an EMG study was within normal limits.  He did physical therapy thereafter for his right shoulder and low back, and notes show that he had limitations with repetitive bending, twisting, and lifting, and also with prolonged walking, sitting, and standing.  Chiropractic care rendered him some temporary relief.

In 2018, Plaintiff was diagnosed at the Dent Neurologic Institute with chronic intractable pain.  He was treated with medication and weight loss was recommended.  Medical THC was also prescribed.  He went to the emergency room in February of 2019 complaining of an increase in his back pain and stating he had recently run out of his medication.  He was discharged with medication and was to see his primary care physician shortly.

### C. Expert Opinions

Plaintiff underwent a consultative psychiatric evaluation on June 17, 2017.  Dr. Fabiano, the consultative examiner, reported that Plaintiff was not receiving any treatment for mental impairments at that time and was not taking any medications for his neck and back pain.  Plaintiff said he had recently gained a substantial amount of weight and was depressed all the time.  He also described memory problems and difficulties with activities of daily living.  Dr. Fabiano thought that Plaintiff had no difficulty understanding, remembering, and applying simple instructions or using reason and judgment to make work-related decisions.  He could also sustain concentration and perform a task at a consistent pace.  He was moderately limited, however, in his ability to interact with others and to regulate his emotions.  (Tr. 312-16).

Dr. Dave did an internal medicine examination the same day.  She noted that Plaintiff's chief complaint centered around his mental health diagnoses.  All of his movements tended to be exaggerated and he declined to perform certain activities such as squatting or toe walking.  He showed some tenderness over the cervical, thoracic, and lumbar spines but straight leg raising was normal bilaterally.  Dr. Dave's diagnoses included chronic pain syndrome associated with psychosomatic overlay, and she thought Plaintiff was moderately limited in his ability to bend, twist, lift, carry, push, pull, and to sit, walk, or stand for prolonged periods.  Additionally, he had moderate limitations for reaching overhead with his right arm.  (Tr. 318-22).

Dr. Miller, a state agency physician, expressed an opinion as to Plaintiff's physical capabilities on August 16, 2017.  He thought Plaintiff could do light work but was restricted to occasional climbing, stooping, kneeling, crouching, and crawling, and also could only reach overhead occasionally with his right arm.  (Tr. 79-81).  The state agency psychologist, Dr. Bruni did not believe that Plaintiff had any severe mental impairments.  (Tr. 78).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even

> more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Selective Reading of Expert Report

As his first claim of error, Plaintiff asserts that the ALJ, without offering any valid explanation, adopted only those portions of Dr. Fabiano's report that supporting a finding that Plaintiff was not disabled.  He points out that Dr. Fabiano's opinion was given some weight by the ALJ, but he argues that the ALJ improperly rejected Dr. Fabiano's conclusion that Plaintiff had moderate limitations interacting with others.  Plaintiff argues that this error was compounded when the ALJ adopted the conclusion of the state agency reviewer that any limitations in social interaction were mild rather than moderate.  The Commissioner responds that the ALJ both had, and articulated, valid reasons for his weighing of these medical opinions.

In his decision, the ALJ first found that Plaintiff did not suffer from any severe mental impairments because his limitations were no more than mild in any of the four functional areas described in the applicable regulation (those areas are understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself, *see* 20 C.F.R. § 404 Subpart P, App. 1, Pt. A, ¶12.05).  However, he went on to determine that Plaintiff had some mental limitations which should be factored into the residual functional capacity finding.  Specifically, he

> gave the claimant's prescription pain medications such as opiates, sleeping pills, and medical marijuana the benefit of the doubt and added mental limitations to the RFC assessment to further erode the occupational base by limiting the claimant to occupations where is able to understand and remember simple instructions, make simple work related decisions, and carry out simple instructions.

(Tr. 17).  The ALJ then noted that Plaintiff was not being treated by a psychologist or psychiatrist.  Turning to Dr. Fabiano's consultative opinion, the ALJ observed that Plaintiff reported no symptoms to Dr. Fabiano other than feeling "bad," and he found the opinion to be "somewhat convincing and persuasive."  (Tr. 19).  The ALJ then adopted the findings made by

Dr. Fabiano which, in the ALJ's view, were supported by his examination (*i.e.* those relating to Plaintiff's ability to perform simple work-related functions), but he rejected the conclusion that Plaintiff had moderate social limitations. He explained that he did so because that conclusion "appears to rely exclusively on the claimant's allegations" and because it was not supported by the treatment records from Dr. Rajendran or by Plaintiff's decision not to pursue psychotherapy. *Id*. The ALJ added that he gave some weight to Dr. Bruni's assessment as well (Dr. Bruni found that any social limitations were no more than mild). *Id*.

Plaintiff's primary reason for asserting that the ALJ erred is that these reasons are not sufficient to support the rejection of Dr. Fabiano's views about Plaintiff's social limitations. He first argues, citing to decisions such as *Richardson v. Astrue*, 2009 WL 4793994 (Dec. 14, 2009), that an ALJ may not reject an opinion about mental limitations solely because it is based on the claimant's subjective report of symptoms. Second, he contends that the ALJ was simply wrong in concluding that Dr. Rajendran's notes do not support the existence of social limitations. Third, he asserts, citing to decisions such as *Moscatello v. Saul*, 2019 WL 4673432 (Sept. 25, 2019) that an ALJ is seldom, if ever, justified in adopting the opinion of a state agency psychologist over that of a consultative examiner who has had the opportunity to see the claimant in person.

Taking these argument in that order, the Court first finds that the rationale of cases like *Richardson* is not directly applicable here. *Richardson* involved the failure to give sufficient weight to the opinion of a treating source - which is not an issue in this case, and which was decided under the former version of 20 C.F.R. §404.1527 - and the error in that case was the ALJ's decision to discount the treating source opinion because it relied on self-reported symptoms while, at the same time, giving greater weight to the opinion of a consultative examiner which was founded on the same type of evidence. Further, this Court has said that "an ALJ is free to discount even a treating source opinion when it relies too heavily on the patient's subjective complaints." *Adam T. v. Comm'r of Soc. Sec.*, 2021 WL 4519809, at *3 (N.D.N.Y. Oct. 4, 2021). It is also important to note that at the time he saw Dr. Fabiano, Plaintiff was not receiving or seeking any mental health treatment. All of these factors allowed the ALJ to make a reasonable determination that Plaintiff's self-report of moderate social difficulties need not have been taken at face value.

Plaintiff also argues that the ALJ incorrectly perceived the treatment records from Dr. Rajendran to be inconsistent with Dr. Fabiano's opinion about socialization issues. It is true that, in those notes, there is some mention of potentially anti-social behavior (particularly as it related to Plaintiff's interaction with Dr. Rajendran), but the notes also contain a discussion of poor motivation and follow-through. Most of Plaintiff's self-reporting of social anxiety is preceded by the phrase "he claims," and there is little in the notes to indicate that Dr. Rajendran gave credence to those claims or attempted to treat those symptoms. While the notes may not be as supportive of his conclusion as the ALJ has asserted (although at times Plaintiff was also described as "pleasant and cooperative"), they also provide little support for the opposite conclusion. Consequently, those notes can reasonably be seen as having little relevance to the

extent of Plaintiff's social anxieties and, therefore, as failing to provide any meaningful support for Dr. Fabiano's conclusions.

Finally, Plaintiff faults the ALJ for choosing to rely on the opinion of the state agency psychologist, Dr. Bruni, to the extent that it conflicted with Dr. Fabiano's opinion. However, the ALJ actually gave more weight to Dr. Fabiano's opinion than he did to Dr. Bruni's. Although the ALJ did conclude that Plaintiff's mental impairments were not severe, he included a number of psychological limitations, including most of those identified by Dr. Fabiano, in his residual functional capacity finding. Further, the decision in *Moscatello v. Saul*, *supra*, is not helpful here, relying, as it did, on multiple factors not present in this case, including the state agency reviewer's lack of access to additional evidence shedding light on the claimant's psychological restrictions. Overall, the Court cannot conclude that the ALJ erred in his evaluation of Dr. Fabiano's opinion or the way in which he incorporated those restrictions into his mental residual functional capacity finding.

### B. Reaching Limitations

Plaintiff next argues that the ALJ erred in his assessment of Plaintiff's reaching limitations. He cites to a line of decisions, including *Kathy M. v. Comm'r of Social Security*, 2021 WL 2619718 (W.D.N.Y. June 25, 2021), for the proposition that an ALJ cannot craft a residual functional capacity determination from "bare medical findings" and that he impermissibly "plays doctor" when doing so. Plaintiff points out that the state agency reviewer, Dr. Miller, concluded that due to issues with his neck and right shoulder, Plaintiff could only reach overhead occasionally with his right arm, but the ALJ did not adopt that limitation, finding instead that Plaintiff could do so frequently. He argues that there is no evidence in the form of a physician's opinion that supports such a determination, so that even if later evidence shows (as the ALJ asserted) that Plaintiff's reaching capability improved since the date of Dr. Miller's opinion, the ALJ had no basis for concluding that it had gotten to the point where Plaintiff could perform overhead reaching on a frequent basis. The Commissioner counters that the ALJ's decision was a reasonable construction of all of the evidence and that it did not need to mirror any particular medical opinion in order to be sustained.

The ALJ explained his conclusion on this issue by noting, first, that multiple medical examinations showed that Plaintiff had normal strength in his right upper extremity. (Tr. 17). He then described Dr. Dave's opinions (she had identified moderate reaching restrictions) as "somewhat persuasive" but did not specifically mention the reaching restriction, commenting only on her conclusions that Plaintiff had mild to moderate exertional limitations and that he appeared to be exaggerating his symptoms. (Tr. 19). He also found Dr. Miller's opinion to be "generally consistent with and supported by the objective clinical findings at the time of his or her record review" but then said this:

> [T]he claimant's treatment records after Dr. Miller's record review, especially with the latter (sic) findings of medical providers at the Dent Neurological

> Institute, does (sic) not support some of his limitations including occasional overhead reaching of the right upper extremity...."

(Tr. 20). He did not explain how he concluded that Plaintiff could reach overhead frequently, but apparently he reached that conclusion because that is the next level of functionality described in the applicable Social Security Ruling (*see* SSR 83-10, defining "occasionally" as being up to one-third of the time, and "frequently" as between one-third and two-thirds of the time).

This Court has spoken in the past to the question of when an ALJ may make a residual functional capacity determination which does not match any of the opinion evidence. It said this about the Court of Appeals' decision in *Matta v. Astrue*, 508 Fed.Appx. 53 (2d Cir. Jan 25, 2013):

> *Matta*, like the present case, involved an RFC which took into account, but did not mirror, the opinions of a number of different sources. The Court rejected the identical argument made by Plaintiff here - that the ALJ must necessarily have used his own lay opinion to craft the RFC because it did not match any one source's opinion - holding that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." See *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This Court has routinely applied that holding in similar situations. *See, e.g., Allen v. Comm'r of Social Security*, 351 F.Supp.3d 327 (W.D.N.Y. 2018).

*Riley v. Comm'r of Soc. Sec.*, 2019 WL 5287957, at *4 (W.D.N.Y. Oct. 17, 2019). However, as Plaintiff correctly points out, there are times when the evidence is not susceptible of lay interpretation, and an ALJ supplants the role of the medical experts by reaching a conclusion that is beyond the expertise of a lay person. *See, e.g., Ortiz v. Colvin*, 298 F.Supp.3d 581 (W.D.N.Y. 2018).

Here, despite the Commissioner's arguments to the contrary, the Court finds that the ALJ engaged in this erroneous practice. He did, as Plaintiff argues, discount the opinion of Dr. Miller - and to some extent, the less precise opinion of Dr. Dave - solely on the basis of findings, as opposed to opinions, contained in the medical records. The key findings he relied on come from the Dent Neurological Institute examinations. The notes from that provider show the following: that Plaintiff was "positive for neck pain" (Tr. 444); that he had "good strength bilaterally in the upper ... extremities" (*id.*); that the range of motion of his neck and shoulders was normal but painful (Tr. 445); and that his neck pain was "chronic" and "intractable" (*id.*). There is also a comment, apparently based on Plaintiff's own report, that any physical activity made all of his symptoms worse. Perhaps a physician, based on these findings, could conclude that Plaintiff would be able to reach overhead for up to two-thirds of a workday, but it appears to be beyond the expertise of a lay person to make that determination. And, as the Court of Appeals has said,

"whether a reaching limitation affects a specific claimant's ability to find work 'is not a [mere] technical or formalistic point.'" *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013), *quoting Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir.2004) (*per curiam*). Accurate vocational testimony is needed to answer that question, and, in turn, a proper assessment of a claimant's ability to reach must precede any questioning of a vocational expert.

The Court recognizes that, even if Plaintiff were limited to occasional overhead reaching with his right arm, there may still be jobs that he can perform. *See, e.g., Pardee v. Astrue*, 631 F.Supp.2d 200 (N.D.N.Y. 2009). But evidence supporting such a finding does not exist in this record. Consequently, the Court will direct a remand so that the ALJ may more appropriately assess the extent of Plaintiff's reaching limitations.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 21), **DENIES** the Commissioner's motion (Doc. 22), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**